# BOSKE *v.* COMINGORE.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF KENTUCKY.

Submitted January 8, 1900. — Decided April 9, 1900.

A United States Collector of Internal Revenue was adjudged by a court of limited jurisdiction in Kentucky to be in contempt because he refused, while giving his deposition in a case pending in the state court, to file copies of certain reports made by distillers, and which reports were in his custody as a subordinate officer of the Treasury Department. He based his refusal upon a regulation of that Department which provided: "All records in the offices of collectors of internal revenue or of any of their deputies are in their custody and control for purposes relating to the collection of the revenues of the United States only. They have no control of them and no discretion with regard to permitting the use of them for any other purpose." This regulation was made by the Secretary of the Treasury under the authority conferred upon him by section 161 of the Revised Statutes of the United States, which authorized that officer, as the head of an Executive Department of the Government, "to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers and property appertaining to it." The Collector having been arrested under the order of the state authorities, sued out a writ of *habeas corpus* before the District Court of the United States for the Kentucky District. *Held :*

(1) That the case was properly brought directly from the District Court to this court as one involving the construction or application of the Constitution of the United States.

(2) As the petitioner was an officer in the revenue service of the United States whose presence at his post of duty was important to the public interests, and whose detention in prison by the state authorities might have interfered with the regular and orderly course of the business of the Department to which he belonged, it was proper for the District Court to consider the questions raised by the writ of *habeas corpus* and to discharge the petitioner if held in violation of the Constitution and laws of the United States.

(3) The regulation adopted by the Secretary of the Treasury was authorized by section 161 of the Revised Statutes, and that section was consistent with the Constitution of the United States. To invest the Secretary with authority to prescribe regulations not incon-

sistent with law for the conduct of the business of his Department and to provide for the custody, use and preservation of the records, papers and property appertaining to it, was a means appropriate and plainly adapted to the successful administration of the affairs of his Department; and it was competent for him to forbid his subordinates to allow the use of official papers in their custody except for the purpose of aiding the collection of the revenues of. the United States.

(4) In determining whether the regulation in question was valid, the court proceeded upon the ground that it was not to be deemed invalid unless it was plainly and palpably against law.

THE case is stated in the opinion of the court.

*Mr. John G. Carlisle, Mr. Henry M. Winslow* and *Mr. William S. Taylor* for appellant.

*Mr. Assistant Attorney General Boyd* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an appeal from a final order of the District Court of the United States for the District of Kentucky discharging appellee, United States Internal Revenue Collector for the Sixth Collection District in Kentucky, from the custody of the appellant as Sheriff of Kenton County in that Commonwealth.

The discharge was upon the ground that the imprisonment and detention of the appellee were in violation of the Constitution and laws of the United States. That ruling presents the only question to be considered.

Under date of April 15, 1898, the Commissioners of Internal Revenue, with the approval of the Secretary of the Treasury promulgated certain regulations for the government of collectors of internal revenue, as follows:

"All records in the offices of collectors of internal revenue or of any of their deputies are in their custody and control for purposes relating to the collection of the revenues of the United States only. They have no control of them and no discretion with regard to permitting the use of them for any other purpose. Collectors are hereby prohibited from giving out any special tax

records or any copies thereof to private persons or to local offi-
cers, or to produce such records or copies thereof in a state
court, whether in answer to *subpœnas duces tecum* or otherwise.
Whenever such subpœnas shall have been served upon them,
they will appear in court in answer thereto and respectfully
decline to produce the records called for, on the ground of being
prohibited therefrom by the regulations of this department.
The information contained in the records relating to special-
tax payers in the collector's office is furnished by these persons
under compulsion of law for the purpose of raising revenue for
the United States; and there is no provision of law authorizing
the sending out of these records or of any copies thereof for
use against the special-tax payers in cases not arising under the
laws of the United States. The giving out of such records or
any copies thereof by a collector in such cases is held to be
contrary to public policy and not to be permitted. As to any
other records than those relating to special-tax payers, collectors
are also forbidden to furnish them or any copies thereof at the
request of any person. Where copies thereof are desired for
the use of parties to a suit, whether in a state court or in a
court of the United States, collectors should refer the persons
interested to the following paragraph in rule X of the rules and
regulations of the Treasury Department, namely : In all cases
where copies of documents or records are desired by or on be-
half of parties to a suit, whether in a court of the United States
or any other, such copies shall be furnished to the court only
and on a rule of the court upon the Secretary of the Treasury
requesting the same. Whenever such rule of the court shall
have been obtained collectors are directed to carefully prepare
a copy of the record or document containing the information
called for and send it to this office, whereupon it will be trans-
mitted to the Secretary of the Treasury with a request for its
authentication, under the seal of the department, and transmis-
sion to the judge of the court calling for it, unless it should be
found that circumstances or conditions exist which makes it
necessary to decline, in the interest of the public service, to fur-
nish such a copy."

These Treasury regulations being in force, a proceeding was

instituted in the County Court of Carroll County, Kentucky — a court of limited jurisdiction — in the name of the Commonwealth against Elias Block & Sons, for the purpose of ascertaining the amount and value of a large amount of whisky which, it was alleged, the defendants had in their bonded warehouses for a named period, but had not listed for taxation, and of enforcing the assessment and payment of state and county taxes thereon. Ky. Stat. § 4241.

In the progress of that proceeding the Commonwealth of Kentucky, represented by the Auditor's agent, took the deposition of Comingore, Collector of Internal Revenue. In answer to questions propounded to him, the Collector stated that Block & Sons, owners of a distillery, made monthly reports to his office of liquors manufactured by them and deposited in the bonded warehouses on the distillery premises from 1887 on; that the defendants made application from time to time for permission to withdraw liquors from bond; and that such reports, commencing October 1, 1885, and ending July 1, 1897, were on the files of his office, but not under his control except as Collector. He was then asked to file copies of those reports and make them part of his deposition. This he declined to do, " under section 3167 of the Revised Statutes of the United States and the rulings of the Department." That section reads: " § 3167. If any collector or deputy collector, or any inspector or other officer acting under the authority of any revenue law of the United States, divulges to any party, or makes known in any other manner than may be provided by law, the operations, style of work or apparatus of any manufacturer or producer visited by him in the discharge of his official duties, he shall be subject to a fine of not exceeding one thousand dollars, or to be imprisoned for not exceeding one year, or to both, at the discretion of the court, and shall be dismissed from office, and be forever thereafter incapable of holding any office under the Government." Being asked what rulings of the Department he referred to other than section 3167 of the Revised Statutes, he said : " The Department does not permit the giving out of anything contained in internal revenue returns or documents by a collector, storekeeper or any other officer of a collection district

for purposes other than those which the statutes of the United States contemplate." That ruling he said was made by the Secretary of the Treasury through the Commissioner of Internal Revenue.

In consequence of the refusal of the collector to file and make part of his deposition copies of the above reports of the defendants, the notary public before whom his deposition was taken adjudged him to be in contempt and ordered him to pay to the Commonwealth a fine of five dollars and to be confined in the county jail for six hours or until he was willing to furnish the copies called for or permit access to the records of his office in order that information might be obtained to be used as evidence in the above case.

The matter having been reported by the notary public to the Carroll County Court, as required by section 538 of the Kentucky Civil Code of Practice, that court made the following order:

" It is therefore ordered and adjudged by the court that the plaintiff's motions be sustained and that plaintiff is entitled to use as evidence the facts stated in the reports and papers filed by any or all of the defendants in the office of the Collector of Internal Revenue for the Sixth District of Kentucky, and also such facts as are stated in the reports made to said office by certain officers known as United States storekeepers, and any other similar records, papers, documents or exemplifications in said office tending to show the amount of liquors on hand at the distillery of the defendants on the 14th day of September, 1889, 1890, 1891, 1893, 1894, 1895, 1896 and on the 15th day of November, 1892 ; it is further ordered that the witness, D. N. Comingore, make or cause to be made or permit the plaintiff, its agent or attorneys, to make true copies of such of said papers as the plaintiff or its attorneys may demand, and that said Comingore, as Collector, attest the same and attach his seal of office thereto, if he has such seal, and that he permit the plaintiff or its agents or attorneys to compare said copies with the originals and verify same, and that he shall also testify further in regard to same, if demand be made, and leave is hereby given to complete the taking of said deposition on giving proper notice, and

for this purpose the clerk is directed upon request of plaintiff's attorneys to transmit said deposition as now on file to W. A. Price, notary public, Covington, Kentucky. It is further adjudged that the action of the notary public, Price, in adjudging the witness, D. N. Comingore, to be in contempt for failure to file copies of reports, papers, documents and exemplifications or to testify as to their contents, as requested, be sustained and affirmed, and that the Commonwealth of Kentucky recover of said D. N. Comingore the sum of five dollars as a fine, and that he be taken by the sheriff of Kenton County, Kentucky, and confined in the jail of said county for the space of six hours, or until he signifies his willingness to comply with the request made in the deposition attempted to be taken, as follows: Please file official copies of the reports made to your office by Block & Son as to the amount of liquor which they manufactured and deposited in the bonded warehouses located on their distillery premises from the year 1887 down to the present time, and also official copies of applications made by them to your office during said time for permission to withdraw such liquors from bond. Also with the following request: Please file official copies of such reports of the United States storekeepers as show the liquors on hand at the warehouses on the distillery premises of the defendants in Carroll County on September 15, 1890, September 15, 1891, November 15, 1892, September 15, 1893, 1894, 1895 and 1896."

This action of the County Court having been brought to the attention of the Collector, he still refused to give the copies called for or to allow access to or inspection of the records of his office for the purposes indicated by the questions propounded to him. He was thereupon again held by the notary public to be in contempt, and, the petition states, that officer adjudged that "the Commonwealth of Kentucky recover of your petitioner the sum of five dollars as a fine, and that he be taken by the sheriff or some constable of Kenton County and confined in the jail of said county for the space of six hours or until he shall signify his willingness to purge himself of the said contempt and testify and give the information from the records and documents under his control and in his custody as Collec-

tor of Internal Revenue of the United States for the Sixth District of Kentucky or allow an inspection of his records for the purpose of obtaining such information for use as evidence in said action of *The Commonwealth of Kentucky* v. *Block et al.*, in said county court," etc.

Having been taken into custody by the Sheriff under this order, the Collector sued out a writ of *habeas corpus* and was discharged from custody by the order of the United States District Court for the Kentucky District.

1. In the brief of the Assistant Attorney General some doubt is expressed whether we can take cognizance of this case upon appeal from the District Court. Prior to the passage of the act of March 3, 1891, establishing the Circuit Court of Appeals, an appeal from the final judgment of a District Court on an application for a writ of *habeas corpus* by or on behalf of one alleged to be restrained of his liberty in violation of the Constitution or any law of the United States went first to the Circuit Court. Rev. Stat. § 763. But by the above act of 1891 it was provided that appeals or writs of error may be taken from the District Courts or from the Circuit Courts direct to this court in certain cases, among others, " in any case that involves the construction or application of the Constitution of the United States." 26 Stat. 826, 828, c. 517, § 5. The present case belongs to that class. The appellee, who was discharged upon *habeas corpus*, invoked the protection of the Constitution against his being restrained of his liberty by the appellant acting under an order of commitment issued by an inferior state court; and the judgment of the District Court proceeded upon the ground that the proceedings against him were inconsistent with the laws of the United States and with the regulations of the Treasury Department legally prescribed under those laws. Throughout, the contention of the appellant has been that the Constitution forbade the giving of the force of law to those regulations adopted by merely executive officers. We think the case is properly here on appeal as one involving the construction and application of the Constitution of the United States.

2. Of the power of the District Court to discharge the appel-

lee if he was held in custody in violation of the Constitution of the United States, no doubt can be entertained. It is true that in *Ex parte Royall*, 117 U. S. 241, 251, it was said that although a court of the United States had power to discharge one held in custody by state authorities in violation of the Constitution of the United States, it was not bound to interpose immediately upon application being made for the writ, but should exercise the discretion with which it was invested " in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." Hence, the general rule that the courts of the United States should not interfere by *habeas corpus* with the custody by state authorities of one claiming to be held in violation of the Constitution or laws of the United States, until after final action by the state courts in the case in which such custody exists. *Ex parte Royall*, above cited; *New York* v. *Eno*, 155 U. S. 89, and authorities there cited; *Whitten* v. *Tomlinson*, 160 U. S. 231, and authorities there cited. But to this general rule there are exceptions which are thus indicated in *Ex parte Royall :* " When the petitioner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order, process or decree of a court or judge thereof ; or where, being a subject or citizen of a foreign State, and domiciled therein, he is in custody, under like authority, for an act done or omitted under any alleged right, title, authority, privilege, protection or exemption claimed under the commission, or order, or sanction of any foreign State, or under color thereof, the validity and effect whereof depend upon the law of nations ; in such and like cases of urgency, involving the authority and operations of the General Government, or the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of *habeas corpus* and discharged prisoners who were held in custody under state authority."

The present case was one of urgency, in that the appellee was

an officer in the revenue service of the United States whose presence at his post of duty was important to the public interests, and whose detention in prison by the state authorities might have interfered with the regular and orderly course of the business of the Department to which he belonged. The District Court therefore did not err in determining the question of constitutional law raised by the application for a writ of *habeas corpus,* and rendering final judgment.

3. We come then to inquire whether the imprisonment of the appellee was in violation of the Constitution or laws of the United States. This question was fully examined in the elaborate and able opinion of Judge Evans of the District Court. 96 Fed. Rep. 552.

The commitment of the appellee was because of a refusal to file with his deposition copies of certain reports made to him by Block & Sons, distillers, of liquors manufactured by them and deposited in the bonded warehouses on the distillery premises during a specified period. Manifestly, he could not have filed the copies called for without violating regulations formally promulgated by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury. If these regulations were such as the Secretary could legally prescribe, then, it must be conceded, the state authorities were without jurisdiction to compel the Collector to violate them.

The Commissioner of Internal Revenue is an officer in the Department of the Treasury. Rev. Stat. § 319. And the Secretary of the Treasury, as the head of an Executive Department of the Government, was authorized " to prescribe regulations, not inconsistent with law, for the government of his Department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers and property appertaining to it." Rev. Stat. § 161.

Now, the reports or copies of reports in the possession of the Collector—for not producing copies of which he was adjudged to be imprisoned—were records and papers appertaining to the business of the Treasury Department and belonging to the United States. The Secretary was authorized by statute to

make regulations, not inconsistent with law, for the custody, use and preservation of such records, papers and property. The Constitution gives Congress power to make all laws necessary and proper for carrying into execution the powers vested by that instrument in the Government of the United States or in any Department or officer thereof. Const. Art. 1, § 8. That power was exerted by Congress when it authorized the Secretary of the Treasury to provide by regulations not inconsistent with law for the government of his Department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers and property appertaining to it. The regulations in question may not have been absolutely or indispensably necessary to accomplish the objects indicated by the statute. But that is not the test to be applied when we are determining whether an act of Congress transcends the powers conferred upon it by the Constitution. Congress has a large discretion as to the means to be employed in the execution of a power conferred upon it, and is not restricted to "those alone without which the power would be nugatory;" for, "all means which are appropriate, which are plainly adapted" to the end authorized to be attained, "which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional." "Where the law is not prohibited, and is really calculated to effect any of the objects entrusted to the Government, to undertake here to inquire into the degree of its necessity would be to pass the line which circumscribes the judicial department and to tread on legislative ground." *McCulloch* v. *Maryland*, 4 Wheat. 316, 415, 421, 423. In the more recent case of *Logan* v. *United States*, 144 U. S. 263, 283, 293, this court, referring to the above constitutional provision, said that " in the exercise of this general power of legislation, Congress may use any means, appearing to it most eligible and appropriate, which are adapted to the end to be accomplished, and are consistent with the letter and the spirit of the Constitution." Again: " Every right created by, arising under or dependent upon the Constitution of the United States may be protected and enforced by Congress by such means and in such manner as Congress, in

the exercise of the correlative duty of protection, or of the legislative powers conferred upon it by the Constitution, may in its discretion deem most eligible and best adapted to attain the object."

Can it be said that to invest the Secretary of the Treasury with authority to prescribe regulations not inconsistent with law for the conduct of the business of his Department, and to provide for the custody, use and preservation of the records, papers and property appertaining to it, was not a means appropriate and plainly adapted to the successful administration of the affairs of that Department? Manifestly not. The bare statement of the proposition suggests this conclusion, and extended argument to support it is unnecessary.

This brings us to the question whether it was inconsistent with law for the Secretary to adopt a regulation declaring that all records in the offices of collectors of internal revenue, or any of their deputies, are in their custody and control "for purposes relating to the collection of the revenues of the United States only," and that collectors "have no control of them, and no discretion with regard to permitting the use of them for any other purpose."

There is certainly no statute which expressly or by necessary implication forbade the adoption of such a regulation. This being the case, we do not perceive upon what ground the regulation in question can be regarded as inconsistent with law, unless it be that the records and papers in the office of a collector of internal revenue are at all times open of right to inspection and examination by the public, despite the wishes of the Department. That cannot be admitted. The papers in question, copies of which were sought from the appellee, were the property of the United States, and were in his official custody under a regulation forbidding him to permit their use except for purposes relating to the collection of the revenues of the United States. Reasons of public policy may well have suggested the necessity, in the interest of the Government, of not allowing access to the records in the offices of collectors of internal revenue, except as might be directed by the Secretary of the Treasury. The interests of persons compelled, under the revenue

laws, to furnish information as to their private business affairs would often be seriously affected if the disclosures so made were not properly guarded. Besides, great confusion might arise in the business of the Department if the Secretary allowed the use of records and papers in the custody of collectors to depend upon the discretion or judgment of subordinates. At any rate, the Secretary deemed the regulation in question a wise and proper one, and we cannot perceive that his action was beyond the authority conferred upon him by Congress. In determining whether the regulations promulgated by him are consistent with law, we must apply the rule of decision which controls when an act of Congress is assailed as not being within the powers conferred upon it by the Constitution; that is to say, a regulation adopted under section 161 of the Revised Statutes should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Those who insist that such a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress.

In our opinion the Secretary, under the regulations as to the custody, use and preservation of the records, papers and property appertaining to the business of his Department, may take from a subordinate, such as a collector, all discretion as to permitting the records in his custody to be used for any other purpose than the collection of the revenue, and reserve for his own determination all matters of that character.

The judgment of the District Court is

*Affirmed.*